**DRI INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 84–10–01375.**

United States Court of International Trade.

Feb. 10, 1987.

Sharretts, Paley, Carter & Blauvelt, P.C., Peter Jay Baskin, New York City, for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, New York City, for defendant.

## MEMORANDUM OPINION

CARMAN, Judge:

This action involves the proper classification of an item designated as the tool chest portion of a "Tool Locker" tool chest and cabinet. Plaintiff, DRI INDUSTRIES, INC. (DRI), challenges the United States Customs Service's (Customs) classification of the subject merchandise upon liquidation as "Luggage and handbags ... Of other material ... Other ... Other," under item 706.62, Tariff Schedules of the United States (1983) (TSUS) at 20 percent ad valorem.

This Court concurs with Customs' classification and assessment of duties of the tool chest holding the tool chest was properly classified as luggage under item 706.-62, TSUS, and dismisses this action.

1. Schedule 7, Part 1, Subpart D, item 706.62 provides in pertinent part:

 Luggage and handbags, whether or not fitted with bottle, dining, drinking, manicure, sewing, traveling, or similar sets; and flat goods:
 \* \* \* \* \* \*
 Of other material:
 \* \* \* \* \* \*
 Other:
 \* \* \* \* \* \*
 Other ....... 20% ad val.
 706.62

2. Schedule 6, Part 3, Subpart G, item 657.25, pursuant to General Headnote 3(c), provides, in pertinent part:

 Articles of iron or steel, not coated or plated with precious metal:
 \* \* \* \* \* \*

## BACKGROUND AND FACTS

The merchandise which is the subject of this action consists only of the tool chest portion of an article described as a "Tool Locker" tool chest and cabinet. Although both the chest and cabinet portions were imported by plaintiff DRI into the United States from Taiwan at the same time and in the same shipping package, it is only the classification of the tool chest portion which DRI contests. The tool chest portion, which is "of iron or steel", measures approximately 19 inches wide by 12-5/8 inches high by 9-1/2 inches deep, has three pull-out drawers with knobs and a hinged top with a handle, and weighs about sixteen pounds when empty. It was classified by Customs upon liquidation under the provision of item 706.62, TSUS [1].

Plaintiff asserts the tool chest portion is, for tariff purposes, a separate article which should be classified under item A 657.25, TSUS [2], duty free under the Generalized System of Preferences (GSP) pursuant to General Headnote 3(c), TSUS (1983).

In the event the subject merchandise (tool chest) does not qualify under the GSP, plaintiff alternatively contends the tool chest should still be classified under item 657.25, TSUS [3], at 7.6 percent ad valorem. Customs has conceded the subject merchandise is entitled to duty free entrance if the Court holds it is properly classifiable under a TSUS provision which is eligible for the G.S.P. treatment.

 Other articles:
 \* \* \* \* \* \*
 Other:
 \* \* \* \* \* \*
 Other ...... [Free]
 A 657.25

3. Schedule 6, Part 3, Subpart G, item 657.25, not subject to preferential treatment, provides in pertinent part:

 Articles of iron or steel, not coated or plated with precious metal:
 \* \* \* \* \* \*
 Other articles:
 \* \* \* \* \* \*
 Other:
 \* \* \* \* \* \*
 Other .... 7.6 ad val.
 657.25

In the event the tool chest is held not to be classifiable under the provisions of tariff item 657.25, TSUS, plaintiff, in the second alternative, claims the tool chest is properly classifiable as an entirety with the cabinet portion under item 727.55, TSUS [4], at 7 percent ad valorem.

DRI, nevertheless, explicitly stated in its post trial brief it did "not herein press its alternative classification claim that the subject article is for tariff purposes an entirety with the imported cabinet portion, and is therefore classifiable as 'furniture.'" Plaintiff's brief at 2.

Customs seeks dismissal of the action contending the Government's classification and assessment of duties is correct.

### DISCUSSION

The question in this case is whether or not the tool chest was intended by Congress to be classified under the provision of item 706.62, TSUS, at a duty rate of 20 per cent ad valorem. The issues presented by the parties center around whether the tool chest is "luggage" under item 706.62, TSUS, as defined in TSUS Schedule 7, Part 1, Subpart D, headnote 2(a)(ii), which states:

2. For the purposes of the tariff schedules—(a) the term *"luggage"* covers—

\* \* \* \* \* \*

(ii) brief cases, portfolios, school bags, photographic equipment bags, golf bags, camera cases, binocular cases, gun cases, occupational luggage cases (physicians', sample, etc.), and like containers and cases designed to be carried with the person, except handbags as defined herein;

Customs presented exhibits at trial which were representative literature used to depict and describe the tool chest and cabinet for purposes of advertising the merchandise for the retail or wholesale markets. Examination of those exhibits reveals the tool chest is depicted and described as a

"separate unit" from the cabinet. The tool chest is described as a "Heavy-Duty, Carry-Along, Three-Drawer Tool Chest" which you "can carry-along wherever you need it." The tool chest is promoted as "[a] totally professional way to securely store and conveniently transport your tools and supplies." The tool chest is "portable" and "will go right to the work site." The "Double Slider Safety Drawers lock-in automatically" which "[m]akes transporting easy...." The literature also displayed pictures of various people using the tool chest, one of which depicted a man kneeling by a water heater with the tool chest on the floor by his side.

DRI presented expert testimony of four witnesses: a plumber, an electrician, an executive of DRI, and a buyer for a large retail chain store, who all agreed the primary purpose of the tool chest and cabinet was for the storing and organizing of tools. Some of these witnesses also testified the tool chest had the capability of being portable. One of these witnesses, the chief executive officer and owner of DRI, testified the tool chest could be transported from place to place but only on a limited basis, *i.e.*, within the house, from one house to another, and from one place to a distant place when taken in an automobile.

Customs' sole expert witness was vice-president of a business which has manufactured and sold metal products, primarily tool boxes and chests, since 1947. He testified his business manufactures a tool chest similar to the tool chest in question. His opinion was the primary purpose of any tool box is to store and organize tools, but his company's tool chest, as is true of DRI's, is designed to be carried and transported from place to place.

The actual tool chest and cabinet, which is the subject of this action, was placed in evidence and thoroughly examined by this Court.

The Court notes at the outset of this discussion:

\* \* \* \* \* \*

Other ...... 7% ad val.
727.55

---

**4.** Schedule 7, Part 4, Subpart A, item 727.55, provides in pertinent part:

Furniture, and parts thereof, not specially provided for:

A presumption of correctness attaches to a classification by the Customs Service, and the importer has the burden of proving that the classification is incorrect.... To give effect to this presumption the courts have long imposed a "dual burden" of proof: the importer must prove not only that the government's classification is incorrect but also that the importer's proposed classification is correct.

\* \* \* \* \* \*

But the trial court cannot determine the correct result simply by dismissing the importer's alternative as incorrect. It must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative.

*Jarvis Clark Co. v. United States,* 733 F.2d 873, 876, 878 (Fed.Cir.1984) (citations and footnote omitted); *see* 28 U.S.C. § 2639(a)(1) (1986).

DRI's main contentions are the primary purpose of the tool chest as supported by testimony, is to organize and store tools, and this "[p]rimary [d]esign [a]nd [f]unction [c]ontrols [the] [c]lassification" of the tool chest. DRI states:

> [T]he subject tool chests are not luggage [as set forth in headnote 2(a)] because they were designed primarily for a purpose other than to be carried with a person[;] ... they were not designed to be used during the type of travel contemplated by the tariff provisions covering luggage.

Plaintiff's Reply Brief at 3. "There is no indication given by the statutory language, or found in prior case law, that an article would qualify as luggage merely by fulfilling the minimum requirement of having been designed for or capable of being carried around...." Plaintiff's Brief at 50. On the contrary, DRI argues, "[a]n examination of the statutory exemplars, and the

rules of *ejusdem generis*[5] demonstrates the sort of travel intended by Congress." *Id.* at 51.

Customs basically argues headnote 2(a)(ii) does not have travel as a primary use for those items included within the scope of the definition of "luggage". Unlike headnote 2(a)(i) which does deal with travel, "2(a)(ii) is not qualified by requirements that the primary or chief use or design of the articles embraced there be for travel." Defendant's Brief at 18. The exemplars listed in 2(a)(ii) are containers designed for storage, protection, and organization of their respective contents with the additional requirement other articles, to be included but not listed, be "like containers and cases designed to be carried with the person." 2(a)(ii). No intent of Congress for a travel requirement, as stated in 2(a)(i), is provided therein. Customs maintains, under the doctrine of *ejusdem generis*, the tool chest is a portable container or case "like" those exemplars listed in 2(a)(ii) because they all retain a common characteristic of being designed to hold or store specific items and are all designed to be carried with a person.

Where the issues involved concern statutory construction "our starting point must be the language employed by Congress," *Reiter v. Sonotone Corp.,* 442 U.S. 330, 337, [99 S.Ct. 2326, 2330, 60 L.Ed.2d 931] (1979), and we assume "that the legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States,* 369 U.S. 1, 9 [82 S.Ct. 585, 591, 7 L.Ed.2d 492] (1962). Thus "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 [100 S.Ct. 2051, 2056, 64 L.Ed.2d 766] (1980).

---

**5.** *Ejusdem generis* is a "rule of statutory construction ... that where particular words of description are followed by general terms, the latter will be regarded as referring to things of a like class with those particularly described. It is invoked as an aid to statutory construction and is applicable when doubt arises as to wheth-

er a given article is to be placed in a class of which some individual subjects are named." 2 R. STURM, CUSTOMS LAW AND ADMINISTRATION § 51.10 at 49 (3rd ed. 1986); *see Izod Outerwear, Div. of General Mills, Inc. v. United States,* —— CIT ——, Slip Op. 85–72 (July 23, 1985).

*American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); *see Izod Outerwear,* Slip Op. 85–72 at 3.

 Where the statutory language is unclear, rules of statutory construction are useful for interpretation. Of utmost concern in these situations is the legislative intent. Any rule of construction resulting in an interpretation contrary to that concern is subservient to the legislative intent. One such rule of statutory construction is known as *ejusdem generis.* It is "applicable whenever a doubt arises as to whether a given article not specifically named in the statute is to be placed in a class of which some of the individual subjects are named...." *United States v. Damrak Trading Co., Inc.,* 43 CCPA 77, 79, C.A.D. 611 (1956).

 DRI, in its summary of argument, emphatically states:

> There is no dispute between the parties insofar as both agree that the validity of the Government's classification of the subject merchandise as "luggage" is *totally dependent upon* whether said merchandise is encompassed by the definition in the Tariff Schedules in schedule 7, part 1, subpart D, headnote 2(a)(ii), which, in part, provides that the article *must* be "designed to be carried with the person."

Plaintiff's Brief at 36 (emphasis added). This appears to be the key issue. But DRI appears to confuse the language of the statute in its continuing argument by relying on the primary design of the tool chest as the eclipsing and excluding factor that removes the tool chest from the 2(a)(ii) category. Not to be overlooked are the five words that precede "designed to be carried with the person" and which words shed light on the issue at hand; these words are ", and like containers and cases ..." The emphasis in this latter part of 2(a)(ii) is on the antecedents modified by the qualifying clause "designed to be carried with the person." With this confusion settled, it is appropriate to look at headnote 2(a)(ii).

The headnote at issue states:

2. For the purposes of the tariff schedules—

(a) the term *"luggage"* covers—

(i) travel goods, such as trunks, hand trunks, lockers, valises, satchels, suitcases, wardrobe cases, overnight bags, pullman bags, gladstone bags, traveling bags, knapsacks, kitbags, haversacks, duffle bags, and like articles designed to contain clothing or other personal effects during travel; and

(ii) brief cases, portfolios, school bags, photographic equipment bags, golf bags, camera cases, binocular cases, gun cases, occupational luggage cases (physicians', sample, etc.), and like containers and cases designed to be carried with the person, except handbags as defined herein;

Schedule 7 at headnote 2(a).

This Court has held:

> [w]here there is an enumeration of specific words of description ... followed by a general term ... the rule of *ejusdem generis* aids in statutory interpretation.... Under the rule of *ejusdem generis,* which means "of the same kind", where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified.

*Izod Outerwear,* Slip Op. 85–72 at 11 (examples and citations omitted). For present purposes, this Court must establish the common characteristics found in "luggage" as enumerated in 2(a)(ii) and determine if the tool chests retain these qualities and confirm their classification under item 706.-62, TSUS. *See id.* at 11–12.

Headnote 2(a) provides the definitional guidance for defining "luggage" as classified under item 706.62, TSUS, which Customs has determined is the proper classification of the tool chests. The exemplars listed in 2(a)(ii) represent a catergory of containers or cases which are designed to store, organize, and protect those contents from which the containers derive their name. Indeed, this Court has observed:

The exemplars in subsection (i) are all articles customarily used for travel,....

The exemplars in subsection (ii) are containers or cases which are designed to hold specific items which give them their names: brief cases to hold papers, school bags to hold school articles, golf bags to hold golf equipment, gun cases to hold guns, camera cases to hold cameras, etc.... The provision does not embrace all containers and cases designed to be carried with the person, but only those *ejusdem generis* with those enumerated. *Adolco Trading Co. v. United States*, 71 Cust.Ct. 145, 154, C.D. 4487 (1973).

This Court, in *Adolco*, clearly enunciated the exemplars listed in 2(a)(ii) represent a category of "containers or cases which are designed to hold specific items which give them their names." *Id.* In determining whether an item is embraced within a class, courts look to the enumerated articles to ascertain the characteristic which they possess in common, and if there is such, whether the article involved has this characteristic. *Kotake Co., Ltd. v. United States*, 58 Cust.Ct. 196, 199, C.D. 2934, 266 F.Supp. 385, 387–388 (1967).

After careful study of the listed items in 2(a)(ii), consideration of the doctrine of *ejusdem generis*, and close scrutiny of the tool chest in question, this Court finds the tool chest is properly classified "luggage" under item 706.62, TSUS, existing as "like containers and cases designed to be carried with the person...." akin to the exemplars listed in 2(a)(ii). The tool chest is designed to organize, store, and protect tools; the very items from which the chest derives its name. The tool chest is also "designed to be carried with the person" from place to place or job to job, around or outside the home. The tool chest may not be used by a tradesman to carry from place to place in his profession, but it is clearly contemplated the chest will be used by the average home handyman in a transportable manner as his needs require. Although the *primary* design may not be tailored to this portable function, the portability is not the only factor in the classifica-

tion of the tool chest. The question is not only one of portability but whether or not the item at issue does have characteristics in common with the enumerated articles. This Court holds that it does.

DRI has neither sustained its burden of proving Customs' classification is erroneous, *see* 28 U.S.C. § 2639(a)(1) (1986), nor convinced this Court its proposed alternative classifications are correct. The bulk of DRI's argument has gone to proving the primary design and function of the tool chest is for the purpose of organizing and protecting tools. DRI concedes "it can be said that the handle on the subject tool chest gives it the intrinsic capacity to be 'carried with the person;' however, as a matter of law, that in itself is not sufficient for classification as luggage." Plaintiff's brief at 46. This does not run counter to the language of 2(a)(ii): "and like containers and cases designed to be carried with the person."

Customs' classification has been scrutinized alone and in comparison with DRI's alternatives and the language of TSUS. The Customs Service was correct in its classification of the tool chest under item 706.62, TSUS, as "luggage" defined in headnote 2(a)(ii).

## CONCLUSION

For the reasons stated, the complaint of plaintiff is dismissed, and the decision of the Customs Service and the assessment of duties thereunder is sustained.

Judgment will be entered accordingly.